IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALETHEA MARIE BAGUIAO,

    Plaintiff,

v.

COLLETE PETERS; HEIDI STEWARD;           Case No. 3:18-cv-02156-MO
JEREMIAH STROMBERG;
CHRISTOPHER RANDAL; and TRACEY         OPINION AND ORDER
COFFMAN,

    Defendants.

MOSMAN, J.,

    This matter comes before me on Defendant Tracey Coffman's Motion for Summary Judgment [ECF 18]. Plaintiff Alethea Baguiao is a current prisoner coming before this court in pro se. She alleges in her Amended Complaint ("AC") [ECF 7], under 42 U.S.C. § 1983, that in connection with being denied Short-Term Transitional Leave ("STTL") from her current term of incarceration, Ms. Coffman (1) subjected Ms. Baguiao to an unconstitutional *ex post facto* law and (2) violated her Fourteenth Amendment rights by denying her administrative review. AC [7] at 6-9[1]. For the reasons explained below, I GRANT Ms. Coffman's motion for summary judgment and dismiss this case with prejudice.

---

[1]     For ease of navigation, I cite to the ECF document page numbers (for this source only).

1 – OPINION AND ORDER

## BACKGROUND

On February 28, 2018, Ms. Baguiao pled guilty and was convicted of two counts of Theft in the First Degree in Lane County Circuit Court. Washington Decl. [ECF 19] Attach. 1 at 1-2. She committed the two thefts on or about June 18, 2017, and July 5, 2017. *Id.* She was sentenced to 13 months of imprisonment on each count, to be served consecutively, followed by one year of post-prison supervision. *Id.* She began serving her sentence on March 15, 2018. Coffman Decl. [ECF 20] ¶ 11. This is her current term of incarceration. *Id.*

This is not Ms. Baguiao's first term of incarceration. In fact, her recent conviction came while she was under post-prison supervision for a previous offense. *Id.* For that previous offense, Ms. Baguiao began serving a term of incarceration on November 3, 2009. *Id.* While serving that term, Ms. Baguiao was released on an Alternative Incarceration Program ("AIP") non-prison leave on November 2, 2015. *Id.* However, after violating the terms of the AIP, she was returned to prison on January 14, 2016. *Id.*

On June 12, 2017, Oregon Administrative Rule § 291-063-0120 ("the Policy") was enacted, which defines the eligibility requirements for STTL. *Id.* ¶ 8. Under the Policy, an inmate is not eligible for STTL if she has failed a non-prison leave (such as an AIP) or STTL during her current term of incarceration, or during an immediately preceding term of incarceration. Or. Admin. R. § 291-063-0120(2)(g). In relation to Ms. Baguiao's current term of incarceration, the term that began November 3, 2009, constitutes her "immediately preceding term of incarceration" under the Policy. Coffman Decl. [20] ¶ 11.

Ms. Baguiao alleges that on April 18, 2018, during her current term of incarceration, she was informed by her intake counselor that, due to the Policy, she was ineligible for STTL because of her failed AIP during her immediately preceding term of incarceration. AC [7] at 6.

She was informed that if she wanted an administrative review of the decision finding her ineligible for STTL, she should send an Inmate Communication Form ("kyte") to the Community Corrections Division. *Id.*

On April 26, 2018, Ms. Baguiao sent a kyte to Ms. Coffman, who is the STTL coordinator for the Oregon Department of Corrections ("ODOC"), requesting administrative review of the decision denying her STTL. Coffman Decl. [20] ¶¶ 1, 9. Ms. Coffman responded in a letter dated May 2, 2018, ("May 2 Letter") which stated: "This is in response to your request for Administrative Review of your STTL eligibility. According to Oregon Administrative Rule, you are ineligible to receive STTL, as you noted, due to having failed AIP. Exceptions to this rule are not made." *Id.* ¶ 9. On May 16, 2018, Ms. Baguiao sent a kyte to Jeremiah Stromberg requesting further review of the decision. *Id.* ¶ 10. The kyte was forwarded to Ms. Coffman, who replied to Ms. Baguiao and explained that administrative review had been completed, referring her to the May 2 Letter. *Id.* Ms. Baguiao sent additional requests for further review to various ODOC personnel, who generally replied that the matter was closed. *See* Pl.'s Resp. to Mot. Summ. J. [ECF 24] at 3-5.

On December 14, 2018, Ms. Baguiao filed the present action. Compl. [ECF 1]. She filed her Amended Complaint on January 1, 2014, naming only Ms. Coffman as Defendant. AC [7]. Ms. Coffman moved for summary judgment on August 28, 2019. Def.'s Mot. Summ. J. [18].

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party

demonstrates no issue of material fact exists, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To determine whether summary judgment is proper, the court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281-82 (9th Cir. 1982).

## DISCUSSION

Ms. Coffman moves for summary judgment on four grounds: (1) the Policy (Or. Admin. R. § 291-063-0120) is not an *ex post facto* law; (2) Ms. Coffman did not violate Ms. Baguiao's Fourteenth Amendment rights; (3) Ms. Coffman is shielded from liability by the doctrine of qualified immunity; and (4) Ms. Baguiao's claims against Ms. Coffman in her official capacity are barred by the Eleventh Amendment. Def.'s Mot. Summ. J. [18] at 1-2. I hold (1) the Policy, as applied to Ms. Baguiao, is not an *ex post facto* law, and (2) that Ms. Baguiao's Fourteenth Amendment claim fails. Because both of Ms. Baguiao's claims are without merit, I do not address qualified immunity or the Eleventh Amendment.

I.   **The Policy as an *Ex Post Facto* Law**

As the United States Supreme Court has made clear, "[t]he Constitution forbids passage of *ex post facto* laws, a category that includes '[e]very law that changes the punishment, and

inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Peugh v. United States*, 569 U.S. 530, 532-33 (2013) (quoting *Calder v. Bull*, 3 Dall. 386, 390 (1798)).

Ms. Baguiao argues that the Policy is an *ex post facto* law as applied to her because she committed her AIP violation (around January 14, 2016) before the Policy was enacted (on June 12, 2017). Pl.'s Resp. [24] at 7. In her telling, the decision to deny her STTL for her current term of incarceration, a decision mandated by the Policy, is further punishment for the offense of committing an AIP violation back in 2016. *Id.* at 13. Therefore, because the Policy was enacted after that violation occurred, the Policy is "retroactive in its application" by subjecting her to a punishment for the AIP violation that was not on the books when she committed the violation. *See id.* at 13, 15 (citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).

While holding some intuitive appeal, Ms. Baguiao's argument misidentifies which offense is being punished. The decision to deny Ms. Baguiao an opportunity for STTL on her current term of incarceration is not punishment for the 2016 AIP violation. Rather, it is part of the punishment for her February 28, 2018, conviction, for which she is serving her current term of incarceration. As described above, the crimes underlying that conviction—the two thefts—were committed on June 18, 2017, and July 5, 2017. Washington Decl. [19] Attach. 1 at 1-2. Because the Policy was enacted on June 12, 2017, before the thefts were committed, it does not have a retroactive effect as applied to Ms. Baguiao's sentence for her February 28, 2018, conviction. Although the Policy makes prior bad acts relevant to the punishment of newly committed crimes—including prior bad acts that predated the Policy's enactment—that does not transform it into an *ex post facto* law. *Cf. United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (holding that "recidivist statutes" which increase the punishment for a new offense based on prior bad acts "do not violate the Ex Post Facto Clause if they are 'on the books at the time

the [present] offense was committed'") (alteration in original) (citations omitted). Therefore, Ms. Coffman did not subject Ms. Baguiao to an *ex post facto* law by denying her STTL based on the Policy.

**II.     Ms. Baguiao's Fourteenth Amendment Claim**

While Ms. Baguiao labels her Fourteenth Amendment claim as an issue of equal protection, in substance it is a procedural due process claim. *See* AC [7] at 9; Pl.'s Resp. [24] at 16-17. I will therefore treat it as such.

Ms. Baguiao alleges that "the Department of Corrections does not allow for inmates to have an Administrative Review when denying them their Transitional Leave [(e.g., STTL)] . . . ." AC [7] at 9. Oregon Administrative Rule § 291-063-140, titled "Approval of Short-Term Transitional Leave," contains a provision which states: "If the transition plan is not approved, the inmate may obtain an administrative review of that decision by submitting a request in writing to the Assistant Director of Community Corrections Division." Or. Admin. R. § 219-063-140(3)(d). Ms. Baguiao argues that this provision is inapplicable to her situation because she was denied STTL before even submitting a formal transition plan for approval; as a result, she argues there is no administrative review process in place to cover when someone is denied STTL before submitting a "release plan." Pl.'s Resp. [24] at 16. Because, in her view, there is no administrative review process established for someone in her exact situation, she was in fact denied administrative review. *Id.*

I find Ms. Baguiao's hair-splitting unpersuasive. Oregon Administrative Rule § 291-063-0140(3)(d) applies squarely to someone in Ms. Baguiao's position—it provides for an administrative review process for someone who has been denied STTL. Furthermore, Ms. Baguiao availed herself of that process. As described above, after being informed by her intake

counselor that the Policy made her ineligible for STTL, she was instructed that she could seek administrative review of that decision by sending a kyte to the Community Corrections Division. Ms. Baguiao did so. Ms. Coffman, on behalf of the Community Corrections Division, responded to Ms. Baguiao's request for review with the May 2 Letter explaining the basis for the denial of STTL. In short, Ms. Baguiao received an opportunity to be heard and an explanation for why she was ineligible for STTL. That was all the process that was due. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15-16 (1979).

## CONCLUSION

For the foregoing reasons, Ms. Coffman's Motion for Summary Judgment [18] is GRANTED. As a result, this case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 17 day of December, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge